And we'll hear argument next in DeMartino versus New York State Department of Labor, 16978. Mr. Han. Thank you, Your Honors. May it please the Court, Brian Ha for the Plaintiff's Appellants, Frank DeMartino and Taggart Construction Corporation. The Court below erred in refusing to rely on evidence outside the complaint in determining whether the bad faith exception to Younger is applicable in this case. In deciding this issue, a court is necessarily required to make factual findings as to the motive and intent of the state actors. It is impossible to make such findings without considering evidence outside the complaint. There is no support whatsoever for the proposition that these issues must be decided based solely on the allegations in the complaint. The cases cited in our papers, in fact, show that evidentiary hearings are often required to determine such issues. The evidence submitted below shows that the DOL proceedings against Taggart and Mr. DeMartino were initiated with a retaliatory and harassing motivation. At the heart of all this is the arrangement that allowed DASNY to pay for a DOL investigator to act exclusively on its behalf in pursuing investigations and enforcing the prevailing wage law on DASNY projects. DASNY effectively controlled this DOL investigator. The DOL proceedings against Taggart were initiated at DASNY's behest through this DOL investigator that it controlled. Basically, DASNY was having problems with Taggart on its projects, on several projects. They made a phone call to this investigator, and all of a sudden, Taggart was the target of DOL investigations and found that all the payments due to its work on these projects were frozen as a result of restraining notices that were issued by this DOL investigator after commencing the investigations at DASNY's behest. Wouldn't the appellants have saved everybody a lot of time and a lot of trouble if they just submitted the payroll records? Judge, that's only one issue. There is a claim here that because one of the restraining notices was for a payroll withholding, therefore, the claim has been made that if only records were produced, then the restraint would have been released. There is no evidence of that, Your Honor. Given the vindictive nature of the proceeding that was commenced, there's nothing— Did the law require them to submit the payroll records? First of all, there's no evidence. No, no, no. Answer that question. Doesn't the law require that they maintain and produce these records? They are required to produce the records, Your Honor. And Mr. DiMartino, in fact, contacted Mr. Padula to try to make some arrangements for it. Again, there's no assurance that the investigation would have been terminated if records were produced. And, in fact, the investigation was continued for over six years while Mr. Padula did nothing. Well, it was never tested because the records weren't produced. Well, apparently— But they should have been. I mean, you know, in theory, I don't know that that's really— The statute doesn't provide for a hearing because it's self-evident that you're supposed to keep the records and produce them. In that case, there are assorted remedies available to Mr. Padula. First of all, they could have issued a notice in the hearing to allow—tackle Mr. DiMartino an opportunity to be heard. But they just never did that. They just never did anything. They issued the restraints and left it in place and did nothing for over six years. And, ultimately, they dropped the investigation. And, again, this is only on the Queens Hospital project. We're not even talking about the other projects. So, in the absence of these records, what would a hearing have accomplished? Well, they could have notified—tackle the allegations that were being made against it and prosecute those charges. I mean, they have claimed that workers were underpaid wages on this project. What then would have happened at the hearing? They could have prosecuted these charges against tackle. At least tackle would have been notified of the charges against it and had an opportunity to defend itself. What would have been the dispute? The dispute would be—the claim would be that tackle did not pay its workers in accordance with the prevailing wage laws. You never produced the records. Nothing was produced. And you're telling me that, by law, you're required to maintain and produce these records. But there are allegations of this prevailing wage law underpayment. And based solely on that— Does your client have the records? Does it maintain these records? Well, it had the records at the time. But because of the long delay, I'm not sure—after six, seven years, what— Well, then you come in and say that the records have been destroyed or something. I mean, you make—there should be something in the record on that. But there was nothing. There was no further proceeding. After the restraint was issued, the DUI took no action on this investigation. They kept the investigation open for over six years and did absolutely nothing until Judge Engelrod in the state court case issued a ruling saying that it was fundamentally unfair and unconscionable to keep— What happened to the $253,000 that were withheld from—on the Staten Island Project? That was withheld in 2010, correct? Correct. That's when they issued the restraining notice, Your Honor. The alleged underpayments occurred during the course of the project in 2006, 2007. Right. Then there was a withholding in 2010 of $253,000, correct, from Staten Island, based on Staten Island. Right. That was the amount of the withholding at the time, Your Honor. The issue there— Has that been resolved, that issue? Well, the issue there is— Just tell me if it's been resolved. Has the $250,000 ultimately been repaid to Tadco, or was it withheld? Was there a state proceeding on that? Yes, there was a state proceeding, Your Honor, which brings us here. The issue there is—ultimately, there was notice and a hearing provided in that case, but not until after seven years after the alleged violations had occurred, and that's the basis for one of our claims. The issue is whether this extraordinary seven-year delay in holding a hearing on these allegations of misconduct that occurred back in 2006, 2007 violated due process, and what's important— That's not my question. My question is, was the $253,000 ever returned to Tadco? And if not, are you suing for damages? If it was, are you suing for the fact that you lost the money during the delay period? Or where does that $253,000 claim stand? It has not been returned, Your Honor. There was a DOL proceeding that resulted in the determination order against Tadco that is still ongoing. What we're seeking here is injunctive relief to stop those DOL proceedings. There has been an order of determination issued. Those proceedings are ongoing. The money has not been released. None have been returned because—and as far as you know, the workers have not been paid. The difference. Right. Or are you contesting that there was no improper underpayment? Correct, Your Honor. And, again, the way they use—the statute is—the preventative measure is intended to ensure that workers are paid, but that's not what they use these proceedings for. By issuing these notices and dragging it on for seven years, they could have filed a claim against the bonding—if the concern is getting the workers paid, they could have filed a claim against the bond at the time of the project to ensure payment, but that's not what they did. They initiated a proceeding, issued a restraining notice, and did nothing for several years. Is that what you're saying? Well, that's part of it, Your Honor. There's a pattern of using this restraining notice to restrain payments, and then just keeping these restraints in place, the investigation open for years on end without doing anything, and putting my client in a position where they have no opportunity to be heard. Let me ask you just one housekeeping matter, Mr. Hahn. We received a 28-J letter from the appellees here stating that the Commissioner of Labor has adopted a report and recommendation which found that your clients committed prevailing wage violations on the Staten Island project for $125,000 or so, and that as a result, your claims to enjoin that proceeding are now moot. Do you agree with that? No, I don't agree with that, Your Honor. First, because those proceedings— So the proceedings are completed, is that correct? Well, that part of it is completed, but there are still ongoing enforcement proceedings of that order, and that order is being challenged, will be challenged, Your Honor. So I would not say— But you are trying to enjoin the proceedings, the underlying proceedings themselves. Right, and now there are going to be continuing proceedings to enforce that order, which we continue to object to, Your Honor. Okay. Thank you. You've reserved some minutes for rebuttal. We'll hear from your adversaries. May it please the Court, Seth Rakosky for the State Defendants. Tadko and Frank DiMartino underpaid their workers in violation of New York labor law by failing to pay the prevailing wage. As authorized by the labor law— Which project are you talking about? Excuse me? Which project are you talking about? The Staten Island project, Your Honor. And that actually was going to be the very first point that I was going to begin with, which is that in order to understand the constitutional claims that have been brought here, it's very important to disentangle the two projects that appear in the complaint and the various withholdings that are related to those projects. Mr. Ha began by talking about the records withholding with respect to the Queens project. However, it's very clear that the constitutional claims with respect to that withholding fail at the outset, because as required by New York labor law, every contractor in this circumstance is required to keep these records and is required to turn them over upon request. In this case, there was a legitimate request for those records, and the records were never turned over. So in that case, with respect to that withholding, there isn't even a legitimate property interest, a cognizable property interest. Your point is that no hearing is required for that, because the law simply requires that they be turned over upon request. That's right. That's a nonstarter. So as far as the 2007 records withholding, the constitutional claims fail at the outset with respect to that. What was the amount of that of the Queens? That was on Queens, right? That was on Queens, yes, Your Honor. And how much was withheld there? I believe that originally there was a $100,000 withholding that was issued, and then that was recalled based on a recalculation, and it was then reissued for, I think, $62,000, I think is my understanding. Oh, I thought that was the records withholding amount, but I'm... Oh, okay. So that's with respect to the 2007 withholding. Then eventually a cross-withholding was then issued on the Queens project to compensate then for reasonably suspected violations with respect to the Staten Island project. I understand that, but there was no suspected violations of the wage problem, of underpaying the wages as far as Queens is concerned. I'm just trying to sort out the facts here a little bit. Well, as far as Queens was concerned, when the Department of Labor issues a records request, that's based on at least some indication that a prevailing wage violation may have occurred. Right. I understand that. But there was no notice. We're withholding X amount because of a prevailing wage violation. We're withholding an X amount because you haven't turned over the records is what it was. That's right. $62,000. That's right. Okay. And then there was a $253,000 withholding for the Staten Island project. So that's with respect to the direct withholding on the Staten Island project. Right. Those are funds that are withheld on the Staten Island project with respect to violations on the Staten Island project. Right. And then there later on was a withholding in Queens, a cross-withholding of Queens of $80,000, was it? I think it's approximately $80,000. I don't have the exact number. At least on the Staten Island problem. That's right. So it's a cross-withholding for funds that may have not yet been paid on the Queens project to compensate for potential prevailing wage violations on the Staten Island project. Now, he's saying that all of this was done to harass his client in retaliation for the lawsuits that had been originally brought by Tadco. And what is your response? Well, there are a number of different responses. That's the whole issue. I mean, this did take over a long period of time. And these withholdings were well after the project was over. I suppose I'm just asking you to perhaps make your argument. There are several responses to that, Your Honor. The first thing I would note is that the administrative proceedings have now concluded. There are findings of fact in those proceedings. Those were submitted as a 28-J letter. And in those findings of fact, it documents how there were actually worker complaints. That's with regard to Staten Island. That's with regard to Staten Island. That's exactly right. Also, there is ‑‑ I don't have the exact pin site in front of me. There is at approximately page 470 of the appendix, there is something submitted by Defendant Padula. He explains to the court, you know, the various things that led up to the withholdings in 2010. I'm getting them mixed up now, too. 2010, 2013. That's also in the appendix. But we would say our answer to that, Your Honor, is severalfold. The first is that there's just simply nothing actually in the complaint that suggests that there was any kind of collusive agreement between DASNY and the Department of Labor. The only allegations in the complaint that make out are about a legitimate funding agreement pursuant to a memorandum of understanding between the two agencies. Any attempt to inject some sort of bad faith into that presumes that there was a baseless investigation that was being pursued. In this case, we simply know that that's not the case, Your Honor. The proceedings went all the way through the administrative process. There was a finding of fact. It's been submitted with respect to a 28J letter. And as far as we are aware, there has not been a challenge to those findings of fact. There was no Article 78 proceeding filed as provided for by the statute. There was no additional challenge. So we would just. Your view is that at least with respect to that proceeding, it is moot because there's nothing times elapsed. That's exactly right, Your Honor. There are still claims with respect to the damages claims in the complaint, for sure. And we make several different arguments there. There are multiple reasons that those claims fail. First is that there is no cognizable property interest in those as we set forth in great detail in the briefs. But even if there were, it's still our position that there was adequate process, both the ability for Tadco to bring an Article 78 proceeding in state court, and even in circumstances depending on the claims that they would like to bring, a breach of contract suit. And then even then, there's the additional issue of qualified immunity. They simply have not pointed to any clearly established law on these points. The district court in all candor noted that the law was fairly unclear in these circumstances. So for all of these reasons, unless the court has any further questions, we would simply rest on the briefs and ask this court to affirm. Thank you. Thank you, Mr. Greenberg. May it please the court, Susan Greenberg for Epeliz, the Dormitory Authority of the State of New York and Dennis Monahan. Your Honors, whatever contractual or other disputes plaintiffs may have had with DASNY, they have at bottom simply failed to allege that DASNY violated their constitutional rights. Plaintiffs don't even allege that DASNY asked DOL to investigate the Staten Island project that was the subject of the wage withholding. Nor could they, since as the evidence deduced in response to their motion practice showed and the hearing officer found, that investigation was prompted by documented worker complaints by two workers. A situation where under the labor law, DOL is mandated by statute to open an investigation. That DASNY reported suspected wage violations for the Queen's project did not interfere with any constitutionally protected interest. And indeed is exactly what public entities are supposed to do where wage violations are suspected. And as your honor pointed out, the only withholding with respect to the Queen's project was a records withholding. A withholding is very clear to not deprive them of any constitutionally protected interest or in any way violate their constitutional rights. So even leaving aside the state's very powerful arguments about why there would be no protected property interest as a general matter. You don't have to deal with that. Here, there was no constitution. So you agree with that. We don't have to deal with that issue. That's correct, because even if there were such an interest, it's not implicated here. The sole allegations of the complaint with respect to DASNY asking DOL to referring a project for investigation relate to the Queen's project. And there was a records withholding after they undisputedly failed to produce records. It's a situation where the statute, as your honors have pointed out, is quite clear that a contractor is not entitled to payment. The cross withholding and the Staten Island withholding both relate to underpayments on the Staten Island project. And that's a claim the plaintiff has not claimed and cannot claim that investigation and those underpayment withholdings were prompted by any action or DASNY. Instead, they were the result of documented worker complaints. With respect to the funding agreement between DASNY and DOL, that arrangement not only serves an important public end, but also the record shows has several important checks and balances in place. The Department of Labor investigator is overseen by a Department of Labor supervisor. He couldn't himself authorize the withholding. And the ultimate determination is to be, and was in this case, made by an administrative hearing officer and subject to state court review. And as for the amounts of the wage withholdings, and I think this is at page 17 of our brief, my understanding is that we're talking about ultimately 38,000 that was withheld on the Staten Island project pursuant to the wage withholdings and 29,000 for the Queens project in terms of the money that was actually available. I'm confused. These are smaller numbers than the 253. I believe the 253 was the total contract amount. Total what? Contractual amount for the Queens project. Oh. So much of it had been paid out. Plaintiff's contractual disputes with DASNY, although not really at issue in this case, largely center on their claims for over a million dollars of extra contractual payments. Payments that would be unlawful under a publicly procured contract, absent compliance with the change order provisions of the particular contract. So that's why in a trial court decision that the plaintiff has submitted, although his claim titles him into all of these funds, the judgment is actually for $35,000 plus interest, rather than the over a million dollars that he is seeking. Unless the Court has any questions for us, I'll rest on my brief. Thank you. Mr. Ha. With respect to the records withholding, contrary to what Mr. Wachowski asserted, there was not a legitimate request for records in that case on the Queens project because there was no basis for initiating the investigation on that project in the first place. We submitted extensive evidence showing that that investigation, at the time it was opened, there was absolutely no evidence, nothing to indicate that there had been any prevailing wage law violation. Do they need a basis? Yes, absolutely, Your Honor. You need a basis to open an investigation and issue a restraining notice. Can't they just request the records if they're getting reports of improper wages anywhere? There was no report. I'm sorry. This is your contractor. You've got all these contracts. We've got workers that are saying that you're underpaying us in Project X. We want to see all your records, X, A, B, C, D. What's wrong with that? First of all, this was before the Second Island project. At that time, there was no complaint. The only thing that happened was Mr. Monahan from DASNY placed a phone call to Mr. Padula and said, I want you to open an investigation. He gave him no basis, no reason to believe that there had been any violation here. And this is all documented. This is just a request for records. What does the statute specifically say on that? I thought the statute said they must be turned over on request. But there has to be some basis for believing that some violation happened. What does the statute say? That's my question. I'm not asking whether you think there ought to be, personally, some basis for it. But what does the statute say? When does it have to be turned over? I thought it had to be turned over on request. And the request could be anything. It could be based on anything. That's the very reason why this is harassing a prosecution, because there was no basis. I'm just out of the blue requesting records when there's no reason. So your answer to that question is you don't know what the statute says. So we can assume that it's on request based upon your non-answer. There's no statute. The statute says they can only be requested on probable cause or unreasonable suspicion. The statute doesn't say that. The statute says that they must be turned over on request, right? I don't have the exact language of the statute, Your Honor. But the statute has to be read in a way so that its enforcement is constitutional. I don't believe an investigation can be commenced without any basis whatsoever. And that's exactly what happened here. Say that again. You don't believe what? I don't believe that an investigation can be opened and charges made without any basis whatsoever. A request for records isn't necessarily an investigation, is it? Well, it is an investigation, Your Honor. That's the beginning of the investigation. He got a phone call from Mr. Monaghan, and just based on that phone call, to believe that any violation had occurred without any complaint from anybody on that project. I don't want to rehash, but does the statute say there has to be, as Judge Walker put it, probable cause or reasonable suspicion? The statute doesn't say that, does it? Judge, I don't have the exact language of the statute in front of me. You've briefed the case and studied the case, and you've studied the statute. Does the statute say anything at all about grounds for the request of the records? Even if there's no express language to that effect, that has to be read. The statute should be interpreted to have some kind of requirement, requiring some kind of a basis for requesting records and commencing proceedings, I guess, a contractor. Thank you very much, Mr. Just one more point, if I may. Regarding the recent order on the Staten Island project, it's not accurate to say that we're not challenging it. We do intend to bring a federal action to challenge the order on constitutional grounds, Your Honor. You intend in the future, right now, that's not happening? That hasn't happened yet, Your Honor, and the time has not elapsed on that, Your Honor. Thank you very much. We'll reserve the decision. That concludes today's oral argument calendar. Court is adjourned.